IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDRE D. TOLBERT #297-061
        Plaintiff               :

        v.                          :   CIVIL ACTION NO. RWT-06-1325

WARDEN NANCY ROUSE, *et al.*    :
        Defendants

## MEMORANDUM OPINION

On May 24, 2006, Plaintiff Andre Dwayne Tolbert, presently incarcerated at the Maryland Correctional Institution in Hagerstown ("MCI-H"), filed a pro se 42 U.S.C. § 1983 complaint for damages and injunctive relief to require his transfer to another prison. He alleges that last March he was wrongfully charged with an institutional infraction and in the process handcuffed too tightly by Defendant Steven W. Thomas, causing injury. He claims that he was not permitted an opportunity to press criminal charges against Thomas, and that Defendant Nancy L. Rouse promised to reduce the infraction and transfer him to another facility, but reneged on the promise. Plaintiff further claims that prison personnel have "falsified" records in the matter. The case now is before the court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Paper No. 12), which shall be treated as a motion for summary judgment, and Plaintiff's cross-motion for summary judgment.[1] No hearing is needed to resolve the Eighth Amendment and due process issues raised in Plaintiff's Complaint. See Local Rule 105.6 (D. Md. 2004).

---

[1] Also pending is Plaintiff's "Motion to Appoint Counsel and to Proceed in forma pauper." Paper No. 8. The request to proceed in forma pauperis is moot, such status having been granted previously in Paper No. 3. The undersigned concludes that Plaintiff is able to articulate his claims and present issues for redress by this court. Therefore, in accordance with the discretion afforded under 28 U.S.C. § 1915(e)(1), Plaintiff's request for appointment of counsel shall be denied without prejudice. See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984).

Plaintiff's Allegations

In his unverified Complaint, Plaintiff states that at approximately 8:00 p.m. on March 23, 2006, he and fellow prisoners J. Eyler and Demetrius Lovelace were "running around" behind A-Building when they were confronted by Defendant Thomas Sargeant Moore and ordered to produce their identification badges. Thomas and Moore walked away but twenty minutes later asked the three prisoners to come inside. Moore implied Plaintiff had been fighting, an assertion Plaintiff denied. Thomas called Plaintiff a liar, and ordered Moore to handcuff him. While escorting Plaintiff to C-Building, Thomas tightened the handcuffs to punish Plaintiff because he "continued talking." Once in a cell, Officers Winder and Rowland removed the handcuffs, and indicated the cuffs had been too tight. Plaintiff then told Lieutenants Chaney and Smith he wanted to file criminal charges against Thomas.

Plaintiff does not provide specific facts describing his agreement with Warden Rouse, other than to state that she agreed to transfer him for his safety and to "reduce" his infraction so that he could remain eligible for parole.[2]

Standard of Review

A court reviewing a complaint in light of a Rule 12(b)(6) motion to dismiss accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the

---

[2] In his summary judgment motion, Plaintiff references Defendants' Exhibits 8 and 9, attached to Paper No. 12, to support his contention that he was to be transferred after agreeing to drop charges against Defendant Thomas. The documents, however, contradict this contention and support Defendants' position that Plaintiff voluntarily agreed to drop the excessive use of force claim against Thomas because he was "satisfied with the matter of record that the warden...issued." Id.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The court, however, need not accept unsupported legal conclusions or pleaded facts, or conclusory factual allegations devoid of any reference to particular acts or practices.  See Revene v. Charles County Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989); United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

It is well established that a motion for summary judgment pursuant to Rule 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  See Celotex, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

An Eighth Amendment claim of excessive force raised by a prisoner against a correctional officer involves analysis of both objective and subjective elements.  See Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998); Williams v. Benjamin, 77 F.3d 756, 760 (4th Cir. 1996).  The objective element is analyzed to determine whether the officer's actions were harmful enough to offend contemporary standards of decency.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992).  Factors which are pertinent to this inquiry include the extent of injuries suffered by the prisoner, the need for the application of force, the relationship between the need for force and the amount of force

used, the threat reasonably perceived by prison staff, and any efforts on the part of staff to temper the severity of their response. See Hudson, 503 U.S. at 7; Whitley v. Albers, 475 U.S. 312, 321 (1986). The core judicial inquiry when analyzing the subjective element is to review "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (citing Whitley, 475 U.S. at 321).

While the prisoner's injury need not be significant to violate the Eighth Amendment, something more than de minimis injury is required in order to prove that excessive force was used.[3] See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by prisoner is de minimis and the force is not of a source "repugnant to the conscience of mankind.").[4]

## Analysis

The uncontroverted record shows that on March 23, 2006, Plaintiff was issued a notice of infraction for fighting with fellow prisoner Jonathan Eyler. Paper No. 12, Exhibit 1, Notice of Infraction and Exhibit 2, Information Report. Defendant Thomas initially escorted Plaintiff to C-Building operations. Id., Exhibit 1. Officer Coudo later escorted Plaintiff and Eyler to the

---

[3] When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. See Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998); Stanley v. Hejirika, 134 F.3d at 634; Riley v. Dorton, 115 F.3d 1159, 1168 (4th Cir. 1997); and Norman, 25 F.3d at 1264.

[4] Even if a prisoner's injuries are *de minimis*, he may still recover if "extraordinary circumstances" are present. Norman, 25 F.3d at 1263. Extraordinary circumstances are present when the force used is "diabolic," "inhuman," or "repugnant to the conscience of mankind," or the pain itself constitutes more than *de minimis* injury. Id., at 1263, and n. 4. Under such circumstances, even relatively minor injuries could constitute excessive force in violation of the Eighth Amendment.

medical department. Id., Exhibit 3, Information Report of March 23, 2006. Although Plaintiff complained of bruises on his wrist caused by handcuffs, medical personnel found no swelling or bruises at that time. Id., Exhibit 4.

The following day, Plaintiff complained to Officer Coulter that he needed medical assistance due to an assault the previous night by corrections officers. Id., Exhibit 5. He was taken to the medical department, where he reported pain shooting from the wrist up the arm. Examination revealed no redness or marks. Id., Exhibit 6, Sick-Call Request/Encounter form and photographs attached thereto. Plaintiff received Tylenol and was told to rest the wrist and not do push-ups. Id. Plaintiff then gave a statement to corrections personnel that Defendant Thomas tightened his handcuffs and grabbed his arm tightly during escort, and that he wanted to press charges against him. Id., Exhibit 7.

On April 3, 2006, Plaintiff stated that he would no longer press charges against Thomas in exchange for consideration by the Warden, Defendant Nancy Rouse. Plaintiff signed the Complaint Withdrawal form on April 5, 2006, the date on which Rouse reduced the infraction to an incident report and sanctioned Plaintiff with ten days of cell restriction, "time served." Id., Exhibit 1 and Exhibit 9. On May 26, 2006, Plaintiff was placed on protective custody after making vague claims that he was in danger. Paper No. 14, Exhibit 6. Shortly thereafter, he was transferred to the Maryland Correctional Institution at Jessup.[5] Id., Exhibit 7, Memorandum dated June 21, 2006.

Even if the Court assumes Defendant Thomas maliciously tightened the handcuffs and grabbed Plaintiff tightly during the March 23, 2006, incident, Plaintiff suffered no apparent injury

---

[5] It appears that after his transfer to a Jessup facility, Plaintiff was returned to MCI-H. The circumstances leading to such transfer are not the subject of this lawsuit.

beyond a subjective report of pain.[6] He later retracted his claim that Thomas used excessive force against him in return for reduced sanctions stemming from the incident. His additional request for transfer to another facility was granted.[7]

Plaintiff has failed to prove that he was injured as a result of excessive force used against him by Defendant Thomas, and has not demonstrated that he was improperly "tricked" into dropping charges against Thomas by Defendant Rouse. Indeed, Plaintiff managed to manipulate a marginal claim against Thomas into a reduction of an infraction that might have impeded his progress to a lesser security status while also obtaining placement on protective custody and transfer to another prison. Defendants are entitled to summary judgment in this case and Plaintiff's motion for summary judgment shall be denied by way of separate order.

Date: 10/13/06                                                  /s/
                                                ROGER W. TITUS
                                                UNITED STATES DISTRICT JUDGE

---

[6] Indeed, medical personnel concluded that his report of ongoing tremors in the right hand was the result of malingering. Paper No. 14, Exhibit 2.

[7] Although he claimed the transfer had been promised by Rouse in exchange for dropping charges against Thomas and that he was not safe at MCI-H due to vague threats made by others, Plaintiff's administrative remedy requests and other correspondence clearly demonstrate that he believed he was entitled to reclassification to a lesser security status and transfer based on his progress toward work release and parole. Paper No. 14, Exhibit 3 at 2.